# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Cornell Cunningham (R-73356), | ) |
| Plaintiff, | ) |
| v. | ) No. 16 C 3156 |
| City of Joliet, et al., | ) Judge John J. Tharp, Jr. |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cornell Cunningham, an Illinois prisoner at Jacksonville Correctional Center proceeding *pro se*, initiated this suit pursuant to 42 U.S.C. § 1983 in March of 2016 against Joliet Police Detective Shawn Filipiak and Officers Kevin O'Boyle and Brad Southard. Cunningham asserts that: (1) the defendants unjustifiably stopped, frisked, and used unnecessary force against him in September of 2013; (2) their actions were, in part, racially motivated; and (3) they unlawfully sought and obtained an arrest warrant charging him with reckless discharge of a firearm shortly after the stop. Cunningham subsequently turned himself in on the charge on December 19, 2013 because, he states, he knew he was innocent. Though the charge was dismissed in May of 2014, he remained incarcerated until the completion of a parole violation proceeding in August of 2014 at which he was found not to have violated his parole.

Currently before the Court is the defendants' motion for summary judgment, which argues that: (1) Cunningham's claims are time-barred; (2) his allegations about the alleged incident of harassment in September 2013 cannot be true since the officers were not working at the same time in the early part of that month; (3) probable cause existed for Cunningham's arrest warrant and incarceration; and (4) the defendants are in any event entitled to qualified immunity. Cunningham

responded to the summary judgment motion, objecting to only two of the defendants' N.D. Ill. Local Rule 56.1 Statements of Material Facts. (Dkt. 89 ¶ 5) (Cunningham states in his response to the summary judgment motion that he "concedes to paragraphs 1-29, 31-45, and 47 of Defendants' SOF"). Accordingly, the Court considers, as the parties do, the majority of the facts admitted. *See* N.D. Local Rule 56.1(b)(3); *Sebesta v. Davis*, 878 F.3d 226, 231 (7th Cir. 2017). For the reasons stated below, the Court grants the defendants' motion.

## FACTS

Cunningham is 29 years old. (Dkt. 83, Defs. SOF ¶ 1.) He is currently incarcerated for convictions for being an armed habitual offender and being a felon in possession of a firearm. (*Id.* at ¶¶ 2-3.) In July 2013, Cunningham was released on parole from sentences imposed following convictions in 2008 for robbery and felony mob action, and in 2010 for armed robbery. (*Id.* at ¶¶ 4-6.) Between July and December 2013, he resided with his stepmother and two sisters in Joliet, Illinois. (*Id.* at ¶¶ 7-8.) On December 19, 2013, he turned himself in on an arrest warrant charging him with reckless discharge of a firearm on September 13, 2013 and was detained in custody. (*Id.* at ¶ 9.) Although the charge was dismissed in May of 2014, Cunningham remained in custody until August 2014, when the Illinois Parole Board determined that he had committed no parole violation. (*Id.* ¶¶ 42-43.) The September 2013 arrest warrant and 2013-14 incarceration, as well as the defendants' alleged harassment of Cunningham in the early part of September 2013, are the subjects of this case.

Shawn Filipiak is a police detective with the City of Joliet. Kevin O'Boyle and Brad Southland are Joliet police officers. (*Id.* at ¶¶ 10-12.) At the time of the events in question, Cunningham knew all three of these police officers, either because he was familiar with cases on which they worked or because he frequented areas of the city they patrolled. Before filing this

case, however, Cunningham knew the officers only by their nicknames: Flip (Filipiak), Southheart (Southard), and O'Boy (O'Boyle). (*Id.* at ¶¶ 14-18, 47.)

*The Alleged Harassment in Early September 2013*

In the complaint, Cunningham claims that all three of the defendants unlawfully detained and handcuffed him in "early September 2013." Second Amended Complaint, ECF No. 47, ¶¶ 5-8. The defendants maintain that there was no day in September 2013 prior to September 13 on which they were all working, (Dkt. 83, ¶¶ 19-20), and provide work schedules consistent with that assertion, *id.* Ex. 3. Cunningham contests the fact, asserting that the evidence "doesn't allow the conclusion that Filipiak was not there when Southard and O'Boyle committed the assault and battery upon Plaintiff." He also contends that he could have presented evidence as to what occurred on this occasion had he been represented by counsel. As will be seen, however, resolution of this fact dispute is not material to the Court's ruling.

*The September 2013 Arrest Warrant and Cunningham's Incarceration*

On September 13, 2013, around 4:14 p.m., several 911 callers reported hearing gunshots near the Evergreen Terrace Apartments, a public housing complex in Joliet. (Dkt. 83, ¶¶ 21-22.) About fifteen minutes after the initial calls, Cunningham's cousin Amin Hudson also called 911. (*Id.* at ¶ 24.) Hudson stated he knew the shooter and where the shooter lived. Hudson also stated he was willing to talk to officers and provided information as to his own whereabouts. (*Id.* at ¶¶ 24-25.)

Officers Southard and (non-defendant) Greg Humphrey were dispatched to the scene of the shooting. (*Id.* at ¶ 27.) Officer Humphrey also went to talk to Hudson. (*Id.* at ¶ 29.) According to the defendants, Hudson told Officer Humphrey that Cunningham had shot at Hudson earlier that afternoon and that Hudson fled the area in fear for his safety. (*Id.* at ¶ 30.) Hudson stated he was

3

willing to go to a police station to make a statement. (*Id.* at ¶ 31.) At around 5:15 p.m. at a Joliet police station, Hudson provided a video statement to Humphrey and Filipiak. (*Id.* at ¶ 33; *see also* Exh. 2A (disk of Hudson's video statement)). Hudson stated that he and Cunningham were first cousins and had known each other for their entire lives. (*Id.* at ¶ 26.) Hudson explained that earlier that day he had heard that Cunningham's friend (Darius Hayes) had hit on Hudson's girlfriend (Charlotte Hamilton) the night before. (*Id.* at ¶¶ 33-34; *see also* Exh. 2A.) Hudson also said that Charlotte told him that Cunningham had contacted her and threatened to kill her for causing problems. (*Id.* at ¶ 34.)

According to Hudson's statement, he called Cunningham, the two had a heated argument, and Cunningham told Hudson he was going to "beat his ass." They met about 30 minutes later by the Evergreen apartment complex. According to Hudson's statement, as they began walking towards each other, Cunningham pulled out a gun and fired six-plus times in Hudson's direction. Hudson ran behind a tree. Cunningham got into a gray Buick and drove away. (*Id.*; *see also* Exh. 2A). Hudson identified Cunningham as the shooter in a six-person photograph line-up. (*Id.* at ¶ 35.)

Cunningham does not dispute that Hudson gave a statement to Joliet officers identifying Cunningham as the shooter. He contends, however, that "Humphrey's report (SOF Exh. #6) is inaccurate because Hudson did not claim Cunningham was the person who shot at him until Hudson was taken to the Police Station and interviewed by Defendant Filipiak." (Dkt. 89, pg. 3.)

After receiving Hudson's statement and after another officer discovered shell casings in a vacant lot near the Evergreen Terrace Apartments, Filipiak drafted an intelligence bulletin stating that probable cause existed for Cunningham's arrest. (*Id.* at ¶¶ 28, 36.) On September 17, 2013, Filipiak met with a Will County prosecutor and signed a criminal complaint charging Cunningham with reckless discharge of a firearm and endangering Hudson's safety. (*Id.* at ¶ 37.) A municipal

4

judge signed the complaint that same day and a warrant issued for Cunningham's arrest. (*Id.* at ¶ 38.)

Several months later, on December 19, 2013, Cunningham turned himself in to Joliet authorities. (*Id.* at ¶ 39.) The criminal charge against him was subsequently dropped because Hudson stopped cooperating with Will County authorities and refused to testify at Cunningham's trial. (*Id.* at ¶ 42.) Though the charge was dropped on May 5, 2014, Cunningham remained in custody pending a violation hearing before the Illinois Parole Board. (*Id.* at ¶ 43.) He was released from custody on August 12, 2014. According to Cunningham, Hudson "got me locked up for no reason." (*Id.* at ¶ 40) (quoting Dkt. 83-1, Pl. Dep., pg. 77.)

*Timing of Cunningham's Law Suit*

In its initial review order of Cunningham's amended complaint, the Court noted that Cunningham filed suit in March of 2016, more than two years after the September 2013 events and that the timeliness of his complaint might therefore be an issue. The Court could not resolve the issue based solely on the complaint, however, and indicated that the defendants could argue that the complaint is time-barred if a developed record supported such an argument. (Dkt. 14.) With respect to this issue, the summary judgment record shows the following.

Cunningham was not incarcerated from July of 2013 to December 19, 2013, or from August 12, 2014 to March 17, 2015. (Dkt. 83 ¶¶ 44-45.) According to the defendants, during his incarceration at the Will County Jail between December of 2013 and May of 2014, Cunningham met several times with an assistant public defender and, on one those occasions, was shown a copy of the police report. (*Id.* at ¶ 46) (citing Dkt. 83-1, Pl. Dep. pg. 117-18.)

Objecting to Defendants' Rule 56.1 Statement, Cunningham states that "an actual reading of [his] Deposition . . . demonstrates that Plaintiff's Public Defender specifically prevented

5

Plaintiff from learning the true identities of Defendants in this case." (Dkt. 89, pg. 3.) Cunningham acknowledges that he met with his public defender several times between December of 2013 and May of 2014, and that his attorney had a copy of the police report. He maintains, however, that the attorney refused to give Cunningham a copy of the report because he was not a "paid attorney" and told Cunningham that he had to submit a Freedom of Information Act (FOIA) request for it.[1] According to Cunningham, his public defender showed him only the victim's statement part of the report and not the part of the report with the officers' names. (*Id.*; *see also* Dkt. 83-1, Pl. Dep. 118.) Cunningham acknowledges that he knew the defendants by their nicknames, but says that he did not know their actual names. (Dkt. 83 ¶ 47) (citing Dkt. 83-1, Pl. Dep., pg. 113.) He contends that not until February of 2016, after his second or third FOIA request, did he receive the police report with the officers' actual names. (Dkt. 83-1, Pl. Dep. 126-27.) As previously noted, Cunningham initiated this suit in March of 2016.

## **DISCUSSION**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The Court's role is "to determine whether there is a genuine issue for trial," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), not to "weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). If the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, the burden shifts to the

---

[1] The Court understands this statement to mean that the attorney was unwilling to provide Cunningham copies of materials obtained in discovery because the attorney would have to pay for the copies himself.

6

non-movant who must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

**1) Timeliness of Cunningham's Claims**

Cunningham alleges that all three defendants unjustifiably stopped, harassed, and used excessive force against him sometime in the first part of September of 2013, and then later that month sought an arrest warrant against him without probable cause. He contends that the defendants' actions were, at least in part, racially motivated. Based on these events, Cunningham asserts violations of his Fourth and Fourteenth Amendment rights, as well as state-law tort claims of defamation, intentional infliction of emotional distress, and malicious prosecution. Cunningham initiated this case in March of 2016. He acknowledges that he filed suit more than two years after the September 2013 events but argues that the two-year statute of limitations should be tolled because he did not know, and was prevented from discovering, the names of the defendants and so could not include them in his complaint.[2]

"Section 1983 does not contain an express statute of limitations, so federal courts adopt the forum state's statute of limitations for personal injury claims." *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Cunningham's constitutional claims thus follow Illinois' two-year limitations period for typical personal injury claims. *Id.*; *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir.

---

[2] Cunningham also contends his claims did not accrue until his release from incarceration. Though the limitations period for his constitutional and related state claims that he was incarcerated without probable cause did not begin until his release (addressed later), his other claims about the September 2013 events, including the obtaining of an arrest warrant, accrued when the events occurred. *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (citing *Wallace v. Kato*, 549 U.S. 384, 397 (2007)); *see also Dorobanov v. Caesars Entm't Corp.*, No. 17 CV 01025, 2018 WL 1071441, at *4 n.6 (N.D. Ill. Feb. 27, 2018).

2019) (citing 735 ILCS 5/13-202). His state-law claims, however, follow 745 ILCS 10/8-101's one-year limitations period. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("Illinois local governmental entities and their employees . . . benefit from a one-year statute of limitations for 'civil actions' against them"). In addition to the forum state's limitations period, "'federal courts must 'also borrow[ ] the state's tolling rules—including any equitable tolling doctrines.'" *Johnson*, 272 F.3d at 521 (quoted case omitted); *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011) (a state's "limitations period is applied in its entirety, complete with related tolling provisions") (citing *Hardin v. Straub*, 490 U.S. 536, 538 (1989)).

"While equitable tolling is recognized in Illinois, it is rarely applied." *Am. Family Mut. Ins. Co. v. Plunkett*, 14 N.E.3d 676, 681 (Ill. App. 1st Dist. 2014). It applies only "where a plaintiff was prevented from asserting his or her rights in some extraordinary way." *Ralda-Sanden v. Sanden*, 989 N.E.2d 1143, 1149 (Ill. App. 1st Dist. 2013). "Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Id.* (citing *Thede v. Kapsas*, 897 N.E.2d 345, 352 (Ill. App. 3rd Dist. 2008)).

In this case, there are disputed issues of fact as to when Cunningham learned the actual names (as opposed to just nicknames) of the defendants. The officers contend that Cunningham's public defender had a copy of the police report with the officers' names and that Cunningham was shown the report at one of their attorney-client meetings between December 19, 2013 and May 2014. According to Cunningham, however, his defense attorney showed him only the victim statement part of the report and refused to provide Cunningham with a copy of the report (because he was not a paying client). Cunningham insists he did not obtain the report until he received a response to his second or third FOIA request sometime in February of 2016 and filed this suit

promptly thereafter. Cunningham gets the benefit of the doubt here; on summary judgment, the Court must resolve this dispute in Cunningham's favor.

That does not make Cunningham's suit timely, however. Cunningham's reason for his delay with filing suit—that he had to wait until he received the police report with officers' names—does not describe an extraordinary barrier to filing suit. To the contrary, pro se litigants often do not know the names of all of the parties they seek to sue; that is a common and easily cleared hurdle. In such situations, well-established practice permits plaintiffs to file suit against "John Doe" officers and to then seek discovery or the Court's assistance to learn the officers' names. *See, e.g.*, *Billman v. Indiana Dep't of Corrections,* 56 F.3d 785, 789 (7th Cir. 1995); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980). In fact, district courts are obliged to help pro se plaintiffs discover the identities of unknown defendants. *Bryant v. City of Chicago*, 746 F.3d 239, 241 (7th Cir. 2014) (vacating judgment where district court failed to act on pro se plaintiff's motion to compel disclosure of the identities of the officers involved in his arrest); *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) (where a plaintiff "faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation").

Here, nothing precluded Cunningham from filing suit against the City of Joliet and John Doe officers and seeking discovery or the Court's assistance to learn the officers' names. Certainly he did not need any discovery to identify the City, and he included the City of Joliet as a defendant in his original and first amended complaints in an attempt to assert an unconstitutional custom or policy. (Dkts. 1, 10.) But rather than filing his suit within the limitations period, Cunningham waited until he learned the actual names of each individual defendant. He offers no explanation, however, for why he could not have proceeded with his suit against the City, which would have

9

afforded him the opportunity to discover the names of the police officers in question. His failure to initiate a timely suit against the City, a defendant he needed no discovery to identify, suggests that Cunningham's failure to file a timely suit was not based on his inability to identify the individual defendants, but rather that he was simply unaware of his need to file within the limitations period. Such a lack of knowledge does not support equitable tolling. *See,e.g., Williams v. Bd. of Review*, 948 N.E.2d 561, 572-73 (Ill. 2011) (an ordinary lack of knowledge of a limitations period does not support equitable tolling); *Thede v. Kapsas*, 897 N.E.2d 345, 352 (Ill. App. 3rd Dist. 2008) (equitable tolling is unwarranted where "[i]t is clear that plaintiff was simply unaware of the . . . limitations period"); *Lakin v. Skaletsky*, 327 Fed. App'x 636, 637-38 (7th Cir. 2009) (plaintiff's "confusion did not excuse his untimely filing").

Further, even crediting Cunningham's account of his efforts to learn the names of the defendants, those efforts do not warrant tolling the statute of limitations; a plaintiff's mistaken belief that he needed the names of the officers he wished to sue does not support equitable tolling. *Nicholson v. Eckstein*, 686 F. App'x 372, 374 (7th Cir. 2017) ("[Plaintiff] mistakenly believe[d] that he needed all the facts at his fingertips before bringing a lawsuit"; equitable tolling did not apply where a plaintiff "could have used placeholder names for the persons who injured him and identified them after suing"); *Davila v. City of Chicago*, No. 17 CV 8145, 2018 WL 5024910, at *4 (N.D. Ill. Oct. 17, 2018) (equitable tolling did not apply where a plaintiff "knew that Chicago police officers caused the injury, and . . . could have filed suit against the superintendent as a nominal defendant along with unnamed officers and used discovery to determine their identities"); *Terry v. Chicago Police Dep't*, 200 F. Supp. 3d 719, 729 (N.D. Ill. 2016) (ignored FOIA requests did not warrant equitable tolling since the "[p]laintiff could have filed suit at any time after he became aware that his FOIA request was being ignored or denied").

Finally, it bears reminding that statutes of limitations serve to protect the rights of defendants to fair and timely notice of claims against them. That protection would be illusory, however, were plaintiffs permitted to unilaterally determine when they have sufficient information to initiate a law suit. *Jimenez v. Weinberger*, 523 F.2d 689, 697 (7th Cir. 1975) (to allow a plaintiff's efforts alone determine when he must file suit undermines "one of the purposes of a statute of limitations," *i.e.*, "to afford a defendant fair notice of potential liability"). See also *Lohrasbi v. Bd. of Trustees of the Univ. of Illinois*, 147 F. Supp. 3d 746, 754 (C.D. Ill. 2015); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) ("a prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose").

Accordingly, equitable tolling is not warranted in this case, and Cunningham's claims (both federal and state) concerning events that occurred in September 2013 are time-barred.

**2) Cunningham's Wrongful Incarceration Claim**

While the majority of Cunningham's claims are time-bared, one is not. He asserts that the defendants unjustifiably sought and obtained an arrest warrant in order to jail him. Cunningham's incarceration lasted eight months (five months until the reckless-discharge-of-a-firearm charge was dismissed in May of 2014, and another three months until August of 2014 when the Illinois Parole Board addressed whether he had violated his parole). Unlike his other claims, Cunningham's Fourth Amendment unlawful detention claim did not accrue until his release from incarceration, which occurred within two years of his filing of this suit in March of 2016. *See Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 669 (7th Cir. 2018) (a Fourth Amendment claim based

on detention without probable cause accrues when the detention ends). But although his constitutional claim about the lawfulness of his incarceration is timely,[3] it is without merit.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917 (2017) (quoting U.S. Const. amend. IV). Restraint of an individual's liberty, whether by an arrest or pretrial incarceration, must be supported by probable cause. *Manuel*, 137 S. Ct. at 917-19. Probable cause exists if "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012).

Here, there is no question that, notwithstanding the ultimate dismissal of charges, there was probable cause to believe that Cunningham had committed the charged offense. The undisputed facts show that on September 13, 2013, several 911 callers in Joliet reported hearing gunshots. Cunningham's cousin, Amin Hudson, was one of the callers. Hudson stated during his 911 call that he knew the shooter and later in a video-recorded statement identified Cunningham as the shooter. Hudson explained that he and Cunningham had argued in a telephone conversation about Cunningham's friend "hitting on" Hudson's girlfriend; that he and Cunningham agreed to meet outside the Evergreen Terrace Apartments; and that, as Cunningham approached Hudson outside the apartments, Cunningham pulled out a gun and began firing. (Dkt. 83, Defs. SOF ¶¶ 24, 32-35; Dkt. 89, Pl. Resp. ¶ 6.) Cunningham does not contest that Hudson informed officers that

---

[3] To the extent Cunningham asserts state-law claims about his incarceration, those claims have only a one-year limitations period, *see* 745 ILCS 10/8-101, and are time-barred for the previously explained reasons.

Cunningham shot at him; he only disputes whether Hudson relayed this information to Officer Humphrey before Hudson was taken to a police station and interviewed by Detective Filipiak.[4] (Dkt. 89 ¶¶ 5-6.)

"A police officer is permitted to rely on information provided by an eyewitness as long as the officer reasonably believes the witness is telling the truth." *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015). "The sufficiency of the evidence for a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false. . . . '[A]s long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing, a crime, the officers have probable cause.'" *Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012).

Cunningham does not identify any basis to conclude that the defendants acted unreasonably in relying on Hudson's report about what happened at the Evergreen Terrace apartments. Nor (given Hudson's video statement in the record) does or can he challenge the officers' account of what Hudson said. Instead, Cunningham contends that the defendants should have done more before seeking an arrest warrant. Cunningham testified in his deposition that, after his release in 2014, he asked Hudson several times why Hudson told officers that Cunningham shot at him "because I wasted time. You wasted some of my kids' time out of their life." When the defendants' attorney asked Cunningham why he had not sued Hudson, Cunningham responded, "it was the detectives' fault . . . they supposed to come interview me. They not supposed to just take one side

---

[4] Cunningham's contention that Hudson did not identify Cunningham as the shooter until Hudson gave his recorded statement is not material. It is undisputed that Hudson identified Cunningham as the shooter before the defendants obtained a warrant and several months before Cunningham surrendered on the warrant and was taken into custody.

13

of the story." (Dkt. 83-1, Pl. Dep. at 67.) According to Cunningham, "he had an alibi at the time of the shooting," and presumably could have convinced officers that Hudson was either lying or wrong. (Dkt. 89, pg. 6) (citing Dkt. 83-1, Pl. Dep. at 68-69.)

Contrary to Cunningham's belief, "[s]o long as an officer reasonably believes the putative victim or eyewitness to a crime is telling the truth, he may rely on the information provided to him by such persons in deciding to make an arrest, without having to conduct an independent investigation into their accounts." *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013); *see also Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 716 (7th Cir. 2013) (an officer need conduct "no independent investigation . . . [where] a reasonably credible witness informs an officer that a suspect has committed a crime") (citations omitted); *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) ("[t]he existence of probable cause does not depend on the actual truth of the complaint" and "officers [a]re entitled to take [a complaining witness] at his word as to [a suspect]'s actions") (citation omitted); *Guzell v. Hiller*, 223 F.3d 518, 519–20 (7th Cir. 2000) ("Police are entitled to base an arrest on a citizen complaint, whether of a victim (as here) or a nonvictim witness, without investigating the truthfulness of the complaint, unless . . . they have reason to believe it's fishy.").

The defendants had no reason to believe that Hudson's account was fishy, and Cunningham provides none. To the contrary, the account made sense in the context of what the officers knew at the time: multiple callers had said shots had been fired in the vicinity; gun shells were found; and only one person identified himself as a victim of the shooting. That the victim also had a familial relationship with the shooter and had known him all his life further bolstered the credibility of his account, both because there would therefore be little risk of misidentification and because one would expect a close relative to be less likely to accuse someone of a serious crime.

14

That Hudson ultimately refused to testify against Cunningham, resulting in dismissal of the charges he was facing, does not change the analysis. Cunningham nowhere suggests that Hudson's refusal to testify was accompanied by any sort of recantation of his prior statements identifying Cunningham as the shooter, nor does he suggest that there was any other evidence developed while the charges were pending that would call into question the existence of probable cause to support the charges. Nor does Cunningham argue that the Parole Board had such evidence during the several months Cunningham was held in custody for a parole violation hearing after the criminal charges were dismissed.[5] Rather, now that a record has been developed, Cunningham's claim about the lack of probable cause appears to be based solely on his contention that police officers should have done more than accept Hudson's version of what occurred before seeking an arrest warrant. As noted above, such a contention is without merit and presents no material issue for trial.

The defendants argue additional grounds for summary judgment, but the Court need not address them since the above discussed grounds suffice to warrant judgment for the defendants.

## CONCLUSION

The defendants' motion for summary judgment [81] is granted. Judgement shall issue in favor of all of the defendants. Cunningham's claims and this case are dismissed.

If Cunningham wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of the Judgment Order and pay the $505.00 filing fee. *See* Fed. R. App. P. 4(a)(1).

---

[5] Cunningham also fails to present any basis to conclude that the defendants contributed to his detention after obtaining an arrest warrant. The decision to try Cunningham was within the purview of the States' Attorney and the decision to conduct a parole violation hearing was that of the Illinois Department of Corrections. *Cf. Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996) ("[T]he State's Attorney, not the police, prosecutes a criminal action.").

Under Fed. R. App. P. 24(a)(1) and 28 U.S.C. § 1915, Cunningham may seek, via a motion in this Court, to proceed *in forma pauperis* on appeal, which will allow him to pay that fee in installments. If he seeks to proceed IFP on appeal, his application must include the issues he intends to assert on appeal. *See* Fed. R. App. P. 24.

Dated: 3/20/19

John J. Tharp, Jr.
United States District Judge